Secure Access, LLC v. EMC Corporation RSA Security, 2016-1354. And we'll hear from Mr. Wright again. You have secure access to the podium for 15 minutes. May it please the court. I'm going to be briefer now, since we just addressed a lot of the claim construction issues in the last session. But I did want to point out just a couple of things. One of these we fleshed out in our brief was that we talk about the security of the preferences file and the importance of securing the file. And recall that we have two patents. There's our patent, the 191 patent, and the parent 838 patent. And those do this in different ways. The 838 patent, all of the claims require using a certain key to encrypt and decrypt the preferences file. All of the 191 patent claims talk about locating the preferences file. And we talked earlier in the last session about our view that locate in the context of the specification means to locate something that is hidden. Now, in terms of how the board's construction affected its decision, we think that's undeniable. If you read the board's analysis for how it went through and identified why it believed the patent claims were in light of the prior art of record, it, first of all, recited a claim that it said was illustrative. This is appendix page 6 in the IPR appendix. It offered an illustrative claim and mentioned claim elements, but said nothing about the location of the preferences file elements. We think, for one, that totally eviscerates the idea that the preferences file needs to be secured. Also, when the board actually goes through its analysis of the independent claims in light of the prior art, they addressed, at appendix 28 and 29, transforming at a host computer received data. Appendix 30 to 33, inserting an authenticity key. Appendix 33 to 36, retrieving an authenticity stamp from a preferences file. There's no discussion of the intervening elements of the authenticity key locating or enabling location of the preferences file. So they're treating locating the preferences file the same way as retrieving the preferences file. Well, the patent separately uses the terms retrieve and locate. And this court's precedent tells us that when different claim terms are used, they're presumed to mean different things. Our suggestion here is that locate means locate a file whose storage location, for lack of a better term, is not known without additional data. In the IPR, in particular, the board relied on dictionary difference. What does hidden mean in your proposed construction? Hidden would mean that the location of the file is. If I go to one of these public storage places, I have to locate locker 637. So I still actually have to go locate it. But I'm going to guess it's not hidden in some sense. And so I started thinking, what is the sense in which you were asking the board to construe the claim? We're asking that hidden mean that there has to be other information that you're given before you can locate that. In your particular analogy, I think you said locker 636 or something. You have that information. Sometimes you need one of these maps, like a treasure hunt. How many times you turn left and right. Exactly. You may have a map. You may have a locker number. The example from the briefing was locating a term in a dictionary. First of all, that's not locate as it's used in the patent. But if you're locating a term in a dictionary, as we mentioned, you have certain context. You know how thick the dictionary is. You know it's in alphabetical order. You know that if you're looking for a term that starts with M, it's going to be roughly in the middle. So you have information ahead of time that you can use to find the location. That's what we mean by hidden there, is that it requires additional information before you can locate the file. And for instance, this supports the dictionary definition. The board's definition to one of the dictionaries on appendix 689, another acceptable definition for locate there was to find or fix the place up, especially in a sequence. So that supports our idea on the dictionary. The prior art of record did not disclose. There was no suggestion or allegation that it disclosed a hidden preferences file. And so there was no basis if the court had applied that construction to invalidate the claims based on the prior art of record. I know we've gone on a lot of these issues in the last session. I'm happy to answer any questions the board has. Otherwise, I believe our discussion during the CBM discussion applies here. I'm happy to respond in my rebuttal time to any additional points. Thank you, Mr. Wright. We will save you nearly 10 minutes if you need it. Mr. Lee. Thank you, Your Honor. Please record. My name is Bill Lee. And together with my partner, Sidney Freeland, I represent DMC. Let me go to two predicates that I think were just offered to the panel. The first is that this patent is about the security of the preferences file. There were references in the last argument to the abstract, the summary of the invention, the background of the invention, and the detailed embodiments. None of that is about the security of the preferences file, none of it at all. That is an attempt to justification for the claim interpretation issue that's been offered to you, which is that the preferences file must be hidden. And that is core to the argument. Now, I'm not sure I completely understand the argument in reply. But I think the argument is something along the lines of, because the preferences file is hidden, the authenticity key must locate it or enable its location. Both of those predicates are wrong as a matter of claim interpretation. And this is that rare case where we think the terms of the claim, the only disclosed embodiments of the specification, and, hopefully, the testimony of both experts on both sides is consistent. So if we move to that hidden concept, which is what was just discussed with the court, the claims don't refer to a hidden preferences file. In fact, the specification discloses files that are not readily known or obscured. And I'll come back to them. But also, encrypted files. And our expert and their expert, Dr. Katz, conceded that those are not hidden. They're encrypted, which is a different form of security. But they're not hidden in any way. So the argument that's being made to you about it. Can I just understand? This maybe is a question more about what they mean. But I guess the question is, what is a question about what they explained hidden is. In some sense, an encrypted file is hidden. Not where it is, but everything except its shell is hidden in some sense. Is that what they meant? Or were they meaning to exclude, there is a file. I have no idea what's in it. So it's a meaningless, except that it says file on top of it. They can't answer, Your Honors. I don't know. But since they're tying everything to locate, maybe the best way I could do it is by looking at what the specification of fact says. And what I think that they are now saying. So the specification does say that there are embodiments where the location of the file is not readily known. So that would be that spot on the wall. Or is obscured. That also could be that spot on the wall with a curtain in front of it. The encrypted file, which their own expert admits, is not hidden. Its location is not obscured in any way. Its location is readily known as opposed to not readily known. Has a different type of security. It's encrypted. But it's not hidden in any way. And I think that that disclosure, which discloses multiple embodiments, some of them where the location may not be readily known. And I want to come back to that just for a second. Some of which may be encrypted. Where both experts admit that those of ordinary skill would understand those not to be hidden should be dispositive of the claim interpretation issue. Now, to go to the not readily known or the obscured, something can be not readily known and not be hidden. Ms. Vreeland's home address, I don't know. But it's readily ascertainable. And the directions to get there once they have her address are readily ascertainable. That is what's described in the specification. There is no requirement that the preferences file be hidden. Nor is there any requirement that there be some sort of security on the preferences file in order for the claim to be satisfied. The other predicate of their argument, which I think I understand, which is because the preference file is hidden, which we think is incorrect. The authentication key must locate it. It's like two thoughts that are tied together, but they don't logically tie together. It's almost as if I were to say, today is Wednesday, so tomorrow I'll be six foot two. They're completely unrelated. And whether the preferences file- I'm not sure the problem with that example is that they're unrelated. They're logically well. The second- Is logically impossible. Is a problem. Actually, I think I can show you that the first may be logically impossible, too. Because the second predicate of their argument that the authenticity key must- and I'm not sure if I'm articulating it correctly. Below it was the authenticity key must provide the ability to locate the preferences file. The argument now appears to be that the authenticity key must either directly locate or enable. And it's an or. The board founded the requirement to be enabling. We agree that the requirement is enabling. Both experts agree that the requirement is enabling. And the record is clear that both the Tiger and Errant references enable. So both predicates of the argument we suggest are incorrect as a matter of law. To go to the last point that Secure Access made, which is this idea that there's a separate locate and retrieve, and the board failed to recognize that, I think that's just incorrect as a matter of fact. What the board said in its opinion after- between pages 15 and 21, the board described how- why files didn't need to be hidden. Why the preferences key, as opposed to the authentication key, locates the preferences file. Then it got, at pages 837 and 855, to the question of locate. And it said, really, two things. It said that there is evidence in the record that both prior references locate the preferences file and then retrieve the authenticity stamp. And as a matter of fact, that's true. And they cited specifically Dr. Tiger's testimony at A265 and A228 and 29, where he said, as a matter of logic and fact, one of the ordinary skill in the art would understand that if you're going to retrieve something from a file, you have to locate it first. And what Dr. Tiger said in both circumstances is you have to, once the authentication has occurred, you locate the file, you retrieve the stamp. And that is consistent with the only disclosed embodiment, which is figure 5 of the patent. And in that figure 5 of the patent, what happens is there's an authentication process. After the authentication process has occurred, a preferences key is sent to the user. Preference key is used to locate the preferences file. You obtain the authenticity stamp, and then you put it on the screen, just as Aaron and Tiger did. So we suggest that the PTAS would Just to make sure I understand, tell me if my understanding is wrong. I understand what the board said about it has to be a precondition is that the authentication key is what allows you to proceed to the next routine, but the authentication key does not then play a role in the performance of the routine to find the preference key. I think 98% correct. The only place I would change it is that the authentication key does not necessarily have to play a role. I don't think that the board said that it's not required. They're just saying that it's not required. And what the board said is if you look at figure 5, you will see that at line 185, the request for the preference key comes back to the web server, and then the preferences key is sent. And the only disclosed embodiment is the preference key located in the preference file. I'm sorry, line 185? On 186, I'm sorry, 186. And then 188 is the preference key coming back. So in summary, the board was correct in not limiting the claim to hidden preferences files. The board was also correct in finding that the authenticity key does, as your honor suggested, provide the predicate, the condition, for the preferences key to locate the preferences file. But it need not do it itself or do it directly. And ultimately, the question of whether the board addressed the locate limitation is one of substantial evidence they did. It's supported both by the declaration that the board relied upon, and also as a matter of logic. You can't retrieve an authenticity stamp until you've located the file where it's stored. Thank you. Thank you, Mr. Lee. Mr. Wright has whatever time he needs, if he needs it. Thank you, your honor. Briefly, I think there's at least some stated confusion about our position and whether it works, because we're contending that the preferences file has to be hidden. And I know the statements were made, and the argument was made that there are embodiments disclosed, and the experts agreed that the preferences file may be encrypted and need not be hidden. And that's part of our point when we point out the differences between the 191 and the 838 patent. In the 838 patent, the file is encrypted, so there's no need to hide it, because its contents are not retrievable without other information, specifically with the preferences key to decrypt it, as claimed in the 838 patent claims. All of the independent claims, the 838 patent. In the 191 patent, on the other hand, all of the independent claims use the word locate. And locate, as we've said in the context of the specification, means to find something. Find something whose location is not known without the information that you're obtaining. And that's why when we see the term authenticity key, locates or enables location of the preferences file. But explain to me what, I guess, with Mr. Lee, I suggested that my understanding of the board's position is the board adopted a preconditioned claim construction, which, as I understand it, means you need the authenticity key to move to the finding routine. And that routine doesn't have to itself make use of the authenticity key. It makes use of other things. That's a way of, it sounds like, a way in which your security could be provided even without the encryption. So how is your position about enabling or locating different from that? What more do you think is required under your claim construction? I think under locate, the file has to be hidden, whether the authenticity key is a precondition or not. Because if an intruder program, for instance, were able to access your system and the file were there readily available with the stamp in it, they'd be able to retrieve that stamp. If you have to have the information contained in the authenticity key, for instance, to locate the file to locations not known, then that is at least a measure of security there. Similarly, if the file is encrypted and you have to have the preferences key to decrypt the file, that's an aspect of security here as well. So is the need for an authenticity key that allows you to move to a routine under which you get a preferences key, if you have a system like that, and you can't find the file without that, all implicit, does that automatically mean that it's hidden? I'm sorry, I didn't quite follow. I'm trying to understand both the meaning of hidden and the relation between hidden, which is your proposed term, and the seemingly separate question of whether the authenticity key needs to be used in the finding, in the locating. If the authenticity key, certainly, if the authenticity key itself, it can be used to locate. That's clear. That's an option that we have. If the authenticity key locates a preferences key, for instance, I know that there are statements, and it was pointed out in the briefing that the district court in claim construction said the preferences key directly locates a preferences file. I think that would satisfy that meaning, too, where it is providing the ability to locate the file. If you're talking about just as a precondition to, I guess it depends on what precondition means. If you're talking about receiving the authenticity key and retrieving it out of the formatted data, if that is the precondition, but then you toss it aside, I think that there could potentially be a situation where you can toss it aside and not use that directly in the location. But I think locate still means something has to locate the preferences file, and it has to be in an obscure location at that point. I don't know if that answers the question or not. We talked earlier about the board's failure to address the claim limitations. And the argument was brought up earlier that no, the board didn't do that. It found exactly where in the prior art it located and retrieved a preferences file, or located a preferences file and retrieved the authenticity stamp. And we respectfully disagree with that. I think the board, it did at least reportedly identify where the authenticity stamp was retrieved from a preferences file. But in all of those situations, there was no suggestion that the preferences file was anywhere other than in hand readily available. And our point in that argument was that by saying that the elements to enable the authenticity key to be retrieved from the formatted data and to locate a preferences file, board simply said, we disagree that this has to be hidden. And then they basically skipped to the next step and said, when you take the authenticity stamp out of the preferences file, you've satisfied these elements. And that's why we said that there hadn't been enough there to show invalidity in light of this prior art. There's no suggestion in the prior art that a file is hidden or that there's any information needed to locate that file. That was our position on that. And I have a hypothetical for you. Go ahead. Let's assume we were to affirm the board in the first case. What effect does that have on this case? If you affirm the board in the CVM, then on all grounds. Hypothetically. Yeah, so you would hold that the patent is subject to CVM review and that all the claims except 24 are invalid, then I believe. The other way, the CVM covers everything. This is the one that's missing 24. Right, right, yeah. So if you affirmed CVM, then it would dispose of the issues in this case. How about the reverse question? If we reverse the board in the first case and find it was not a CVM, does that mean we can't deal with the merits? It was not a proper CVM. We can't deal with the merits in the first case. We deal with them in the second case? I think in that situation, if you reverse the CVM eligibility finding, you don't reach the question of the merits in the first case. But you would need to decide the merits one way or another, hopefully reversing in the second case. Can I ask, I'm sorry, the third question. This is more about, I don't know, do you care? Suppose we affirm, in this case, the IPR. So all claims but 24 are held to be properly canceled. That leaves claim 24 for the CVM. Do you have a stake in our deciding that? I think we do have a stake in deciding that, both in terms of claim 24 itself, and also in, as I mentioned earlier, just the guidance as litigants. Yeah, but we don't generally give guidance because you're interested in the answer to the question. If you don't care about claim 24, if you have, I guess that's really the question. But you said you do. Well, we certainly care about having open claims in the patents. I know that I believe there are still licensees who pay licenses on the patents based on whether there is or is not a valid claim alive still in the patent, for instance. I can tell you I don't believe that claim 24 is currently being asserted. But we certainly have a stake and property interest in claim 24. Let me try one more version for you since we're playing this game. If we vacate and remand in the first case. On all issues? On all issues. What effect does that have on this case? I mean, I'm trying to run that out of my head. I think then you have two separate appeals. The court could potentially rule on this case or wait and see what happens in that case. Obviously, there are more claims at issue here. So there's at least some interest in reaching a decision. We'd like everything to be overturned and none of it to be affirmed. So that's my short answer to that. But certainly, the court has discretion to rule on the cases as it chooses. Thank you, Mr. Wright. Case should be taken under advisement. All rise. Now the court is adjourned until tomorrow morning. It's 10 o'clock a.m.